IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FANCASTER, INC., a South Dakota Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>COMCAST CORPORATION, a Pennsylvania Corporation, COMCAST INTERACTIVE MEDIA, a Delaware Corporation and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>        Defendants/Counterclaimants Third Party Plaintiffs,<br><br>vs.<br><br>FANCASTER, INC.<br><br>        Counterclaim-Defendant<br><br>   and<br><br>CRAIG KRUEGER,<br><br>Third-Party Defendant. | Civ. No. 2:08-cv-02922-JAG-ES<br><br>**FIRST SUPPLEMENTAL COMPLAINT**<br><br>**JURY DEMAND** |

      Plaintiff Fancaster, Inc. ("Fancaster"), for its First Supplemental Complaint against Defendant Comcast Corporation ("Comcast Corp."), Comcast Interactive Media, LLC ("Comcast Interactive"), and Comcast Cable Communications Management, LLC ("Comcast Communications") (collectively "Comcast") states, on knowledge and information and belief:

**PRELIMINARY STATEMENT**

    1.    This is an action for damages and injunctive relief against a corporate

conglomerate that violated a small company's valuable trade name, trademark and other intellectual property rights.

## PARTIES

2.  Fancaster is a corporation registered and organized under the laws of the State of South Dakota and a registered foreign corporation in New Jersey. Fancaster has a principal place of business at P.O. Box 3153, Fort Lee, New Jersey 07024.

3.  Defendant Comcast Corp. is a corporation organized under the laws of the State of Delaware, and has a principal place of business at One Comcast Center, Philadelphia, Pennsylvania 19103-2838.

4.  On information and belief, Defendant Comcast Interactive Media, LLC, is a limited liability company registered and organized under the laws of the state of Delaware, and having a principal place of business at 1500 Market Street, 35th Floor, Philadelphia, Pennsylvania 19102-2148.

5.  On information and belief, Defendant Comcast Cable Communications Management, LLC, is a limited liability company registered and organized under the laws of the state of Delaware, and has a principal place of business at 1500 Market Street, 35th Floor, Philadelphia, Pennsylvania 19102-2148.

6. Comcast, its affiliates, and its wholly owned subsidiaries and business ventures, provide cable television, internet, and digital voice products and services throughout the United States. These services are provided through cable television and related means of transmission, and via the internet at websites such as www.comcast.com, www.comcastsportsnet.com, www.comcast.net, related sports content websites, and www.fancast.com.  As discussed below, they have more recently been provided through  www.fancastxfinity.com, www.fancastxfinity.tv,

www.xfinity.com, www.xfinity.tv, and www.xfinitytv.com.

## JURISDICTION AND VENUE

7.  This is an action for trademark infringement, trade name infringement, and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), misappropriation of trademark under N.J.S.A. 56:4-1, and common law unfair competition and deceptive trade practices.

8.  This court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b), and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Fancaster's claims brought under state law. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

9.  This court has jurisdiction over Comcast's person through Comcast's promotion and dissemination of its website www.fancast.com, and the content therein, over the internet, and the sale and provision of cable television, broadband services, and digital voice services in the State of New Jersey.

## FANCASTER'S FANCASTER® MARK AND SERVICES

10.  Since as early as July 1988, Fancaster has been in the business of providing wireless broadcasting services and information related to current events, sports, and consumer advertising. Fancaster's transmission and broadcast of information was originally provided by means of low-power radio transmission, and it has adapted its business model since that time in response to changes in communications technology and the availability of the internet. Beginning in 1997, Fancaster offered its services through major wireless paging carriers and delivered sponsored broadcast new alerts to subscribers of wireless alphanumeric one-way and two-way pagers. The services were sponsored by companies such as Toyota Motor

Company and Fidelity Investments.

11. Fancaster has provided its products and services under its trade name Fancaster, Inc. and under its service mark FANCASTER. In accordance with federal law, Fancaster registered its mark FANCASTER on the Principal Register of the United States Patent and Trademark Office, Registration Number 1,543,885, issued for "broadcasting services." That Registration has become incontestable by reason of Fancaster's continued use of the mark for five years from the date of registration. Craig Krueger is the President of Fancaster. Mr. Krueger has assigned any interest he might have in the FANCASTER® mark and the related registration to Fancaster, and that assignment has been recorded with the U.S. Patent and Trademark Office.

12. With the proliferation of handheld internet devices and the growth of the internet, Fancaster has continued to expand its service and product offerings, including the web site www.fancaster.com which was launched in July, 2006. The content provided on the web site relates to sports, sports fans, broadcasting, and related content and information. Fancaster also provides content and third-party advertising over wireless devices via text messaging.

13. As a result of Fancaster's use and promotion of the FANCASTER® mark and trade name, Fancaster has developed valuable goodwill and has acquired valuable common law rights in the mark.

**COMMUNICATIONS WITH DEFENDANTS AND THEIR ACTIVITIES**

14. Comcast and its affiliates and its wholly-owned subsidiaries and business ventures provide cable television, internet, and digital voice products and services throughout the United States. Comcast provides these services through cable television and related transmission media, and over the internet.

15. In 2006, Comcast became aware of Fancaster's federally registered trademark.

16. In April-July of 2006, Fancaster's President, Craig Krueger, discussed possible business relationships with Comcast. One possible relationship contemplated Fancaster, d/b/a Target Wireless, and Comcast launching a project to mobilize young voters through the use of text messages and the internet. Another possible relationship contemplated Comcast acting as a corporate sponsor for FANCASTER services.

16. Comcast became aware of Fancaster's intellectual property rights through other communications as well. By way of example, Krueger sent an electronic mail communication dated July 18, 2006 advising Comcast of the FANCASTER registration and demanding that Comcast cease the use of the name "Fancaster" in connection with a promotion on the newengland.comcastsportsnet.com website. On the following day, Krueger spoke with an attorney in Washington, D.C. concerning this infringement. The attorney advised Krueger that he could not become involved because he and his firm represented Comcast. Krueger then told the attorney that Comcast should be advised that Comcast was infringing the FANCASTER® mark, and that Comcast should immediately cease and desist its infringing activities.

17. Also in April-July of 2006, Krueger entered into discussions with Comcast, facilitated by a Comcast representative Tom Berkelman, concerning a possible business relationship between Fancaster and Comcast to offer mobile voter services during the 2006 election cycle. However, by an electronic mail from Berkelman dated July 25, 2006, Krueger was advised that Comcast was suspending the discussions ". . due to the infringement issues surrounding Fancaster.com."

18. After breaking off discussions with Fancaster, Comcast chose to intentionally

disregard Fancaster's known intellectual property rights. Specifically, on or about August 21, 2006, Comcast Communications registered one domain name www.fancast.com. In addition, Comcast Communications filed a U.S. trademark application for FANCAST, application Serial No. 76664966 for "video and audio broadcasting services, internet services, education and entertainment services." The identification of services has since been amended.

19. In April of 2007, Comcast announced plans to launch an internet service that would provide, among other things, broadcasting services under the FANCAST service mark via the www.fancast.com website, and it released a Beta version of the website. Comcast described www.fancast.com as providing an "all- inclusive escape that combines everything you want to know about TV, movies and celebrities. More than just the latest entertainment buzz, Fancast is also your number one place to find what to watch, where to watch it, and when it's available."

20. As advertised, the content of www.fancast.com provides select television programs, information regarding television programming, television program listings and reviews, celebrity news information, movie recommendations and ticket purchasing through the affiliated website www.fandango.com. Television programming and movie ticket information available on the web site includes information for programming and movies in New Jersey.

21. On or about January 8, 2008, Comcast launched the Fancast website. The described web site content continues to be available at the www.fancast.com website today.

22. Comcast's first use of the FANCAST designation commenced long after

Fancaster's first use of its FANCASTER® mark and after Fancaster's federal registration became incontestable.

23. Comcast was aware of Fancaster's prior use and registration of the FANCASTER® mark when Comcast adopted the FANCAST designation.

24. Comcast did not ask for or obtain Fancaster's permission to use the FANCAST designation in connection with Comcast's services provided over the internet. Comcast is now providing Comcast's services under the designation FANCAST in commerce in the United States and in this District.

## USE OF THE INFRINGING MARK TO TRANSITION TO NEW NAME

25. On or about December 15, 2009, Comcast announced that it had made substantial changes to the Fancast.com website to allow its cable television customers to access on-demand television shows and movies in their premium subscription packages. Comcast modified the logo on the Fancast.com website to "Fancast XFINITY TV" to reflect this change. Comcast referred to Fancast XFINITY TV as "the new name for On Demand Online."

26. On or about February 3, 2010, Comcast announced a major re-branding initiative for its cable television, high-speed Internet access, and telephone services to "Xfinity." The following week, XFINITY was rolled out in 11 markets, including Boston, Philadelphia, Baltimore, Washington D.C., Chicago, Portland, Seattle, Hartford, Augusta, Chattanooga, and parts of the Bay Area and San Francisco, with plans to expand to additional markets later in the year.

27. Comcast has promoted XFINITY through a media and public relations campaign, including advertisements during the 2010 Winter Olympic Games coverage on NBC. Comcast has continued to heavily promote the new Xfinity brand through television, Internet, print, and

radio advertising. On information and belief, some of these advertisements also promote the new "Fancast XFINITY TV" services.

28. On information and belief, Comcast intends eventually to transition to XFINITY TV from Fancast.com. On information and belief, Comcast's use of "Fancast XFINITY TV" is part of that transition plan, and Comcast refers at various times to the "Fancast XFINITY TV" services as "Fancast XFINITY TV," "Fancast" and "Xfinity." The media has also interchangeably referred to those three names in describing Comcast's services. Comcast's actions have exacerbated the likelihood of confusion arising from Comcast's use of "Fancast" and have increased the damage that Fancaster is suffering from Comcast's infringement..

29. On information and belief, Comcast is obtaining substantial revenues from its infringement of the FANCASTER® Mark through the new services it has begun offering on the www.fancast.com website as well as on www.fancastxfinity.com, www.fancastxfinity.tv, www.xfinitytv.com, and www.xfinity.tv, the latter four of which redirect Internet users to the Fancast.com website. On information and belief, Comcast's revenues from cable television subscriptions, high-speed Internet access, and advertising have increased as a result of the new services that Comcast is offering through the Fancast.com website and the aforementioned four websites that redirect to Fancast.com.

### EFFECT OF COMCAST'S ACTIVITIES ON THE CONSUMING PUBLIC AND FANCASTER

31. Comcast's use of the designation FANCAST in the manner described above is likely to cause confusion or reverse confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, as to an affiliation, connection or association between Comcast and Fancaster, or as to the origin of Comcast's or Fancaster's services, or as to the sponsorship or approval of Comcast's services by Fancaster. Consumers are likely

to believe that Comcast's services emanate from or are related to Fancaster, or that Fancaster's services emanate from or are related to Comcast.

32. Comcast's use of the designation FANCAST in the manner described above falsely indicates to the consuming public that Comcast's services originate with Fancaster, or are affiliated, connected or associated with Fancaster, or are sponsored, endorsed or approved by Fancaster, or in some manner related to Fancaster and/or its services.

33. Comcast's use of the designation FANCAST in the manner described above falsely indicates to the consuming public that Fancaster's services originate with Comcast, or are affiliated, connected or associated with Comcast, or are sponsored, endorsed or approved by Comcast, or are in some manner are related to Comcast and/or its services.

34. Comcast's use of the designation FANCAST in the manner described above falsely designates the origin of Comcast's services and falsely and misleadingly describes and represents facts with respect to Comcast and Comcast's services.

35. Comcast's use of the designation FANCAST used in the matter described above enables it to trade on and receive the benefit of goodwill developed by Fancaster in its FANCASTER® trademark that Fancaster has built up at great labor and expense over many years. Comcast's use also enables it to gain acceptance for its own services, not solely on their own merits, but on the reputation and goodwill of Fancaster and its FANCASTER® mark.

36. Comcast's use of the designation FANCAST in the manner described above unjustly enriches Comcast at Fancaster's expense.

37. Comcast's activities have caused irreparable injury to Fancaster, and unless restrained by this Court, will continue to cause irreparable injury to Fancaster and to

the public. There is no adequate remedy at law for this injury.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

38. Fancaster repeats the allegations in paragraphs 1 - 37 above as if fully set forth herein.

39. The acts of Comcast complained of herein constitute infringement of Fancaster's federally registered FANCASTER® mark in violation of 15 U.S.C. § 1114(1).

40. Comcast's conduct has been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: FEDERAL FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION

41. Fancaster repeats the allegations in paragraphs 1 - 40 above as if fully set forth herein.

42. The acts of Comcast complained of herein constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

43. Comcast's conduct has been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT III: FEDERAL TRADE NAME INFRINGEMENT

44. Fancaster repeats the allegations in paragraphs 1 - 43 above as if fully set forth herein.

45. The acts of Comcast complained herein constitute trade name infringement in violation of 15 U.S.C. § 1125(a).

46. Comcast's conduct has been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT IV: CYBERSQUATTING

47. Fancaster repeats the allegations in paragraphs 1 - 46 above as if fully set forth herein.

48. The acts of Comcast complained of herein constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

## COUNT V: MISAPPROPRIATION OF TRADEMARK & TRADENAME
## N.J.S.A. § 56:4-1

49. Fancaster repeats the allegations in paragraphs 1 - 48 above as if fully set forth herein.

50. The acts of Comcast complained of herein constitute trademark and tradename misappropriation in violation of New Jersey Statutes § 56:4-1.

51. Comcast's conduct has been willful and intentional and with knowledge of Fancaster's trademark rights.

## COUNT VI: UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

52. Fancaster repeats the allegations in paragraphs 1 - 50 above as if fully set forth herein.

53. The acts of Comcast complained of herein constitute unfair competition and/or deceptive trade practices in violation of the common law of New Jersey.

## COUNT VII: TRADE NAME INFRINGEMENT

54. Fancaster repeats the allegations in paragraphs 1 - 52 above as if fully set forth herein.

55. The acts of Comcast complained of herein constitute trade name infringement in violation of the common law of New Jersey.

## COUNT VIII: UNJUST ENRICHMENT

55. Fancaster repeats the allegations in paragraphs 1 - 51 above as if fully set forth herein.

56. The acts of Comcast complained of herein constitute unjust enrichment of Comcast at Fancaster's expense.

## COUNT IX: INJUNCTIVE RELIEF

57. Fancaster repeats the allegations in paragraphs 1 - 56 above as if fully set forth herein.

58. The acts of Comcast complained of herein have caused irreparable injury to Fancaster's goodwill and reputation, and, unless enjoined, will cause further irreparable injury, for which Fancaster has no adequate remedy at law.

## PRAYER

WHEREFORE, Fancaster prays that the Court enter Judgment as follows:

(a) That Defendants, their officers, agents, servants, attorneys, and all those persons in active concert and participation with them, be preliminarily and permanently enjoined from using "Fancast" to refer to, advertise, or promote any services offered by Comcast, including but not limited to those offered under the Xfinity brand, or to shift registered users of the Fancast.com website from Fancast.com to Xfinity.com or any other website;

(b) That Defendants, their officers, agents, servants, attorneys, and all those persons in active concert and participation with them, be permanently enjoined and restrained from using in connection with Defendants' services and any other goods or services, the designation FANCAST, and any other mark or name that is

confusingly similar to Fancaster's FANCASTER® mark;

(c)  That Defendants, their officers, agents, servants, employees, attorneys, and all those persons in active concert and participation with them, be required to deliver to the court for destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, marketing materials and advertisements in Defendants' possession or control which use or depict the designation FANCAST, or any other mark or name that is confusingly similar to Fancaster's FANCASTER® mark;

(d)  That Defendants be ordered to file with the court and serve upon Fancaster, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(e)  That Defendants be ordered to transfer to Fancaster ownership of the domain name registrations for www.fancast.com, www.phancast.com, www.fancas.com, www.fancst.com, www.fancastic.com, www.fancastxfinity.com, www.fancastxfinity.tv, and any other domain names containing the designation FANCAST, or any other mark or name that is confusingly similar to Fancaster's FANCASTER® mark;

(f)  That Fancaster recover all damages it has sustained as a result of Defendants' activities and that its damages be trebled;

(g)  That Fancaster be awarded the Defendants' profits in accordance with 15 U.S.C. § 1117(a), and that these profits be trebled under 15 U.S.C. § 1117(a) or (b);

(e)  That the Court award Fancaster its reasonable attorney fees under under 15 U.S.C. § 1117(a) or (b);

(f) That Fancaster recover its costs in this action and prejudgment and post judgment interest;

(g) That Fancaster recover such other relief as the court may deem just and proper.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b) Fancaster demands a trial by jury on all issues triable of right by jury.

**FANCASTER, INC.,**

By its attorneys,

_____
Michael P. Boudett (*pro hac vice*)
Katie M. Perry (*pro hac vice*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Tel:   (617) 832-1180
Fax:   (617) 832-7000
E-mail:  mxb@foleyhoag.com


_____
Mitchell J. Matorin (*pro hac vice*)
Matorin Law Office, LLC
200 Highland Avenue
Suite 306
Needham, MA 02494
Tel:   (781) 453-0100
Fax:   (888) 628-6746
E-mail:  mmatorin@matorinlaw.com


_____
Sean J. Mack, Esq.
Pashman Stein
A Professional Corporation
21 Main Street, Suite 100
Hackensack, NJ 07601

- 15 -

                                                          Tel: (201) 488-8200  
                                                        Email: smack@pashmanstein.com

Dated: May \_\_, 2010