NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FANCASTER, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORPORATION, | : | |
| COMCAST INTERACTIVE MEDIA, | : | Civil Action No. 08-2922 (GEB-ES) |
| LLC and COMCAST MANAGEMENT, | : | |
| LLC, | : | |
| | : | |
| Defendant. | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| FANCASTER, INC. sometimes d/b/a "TARGET WIRELESS", | : | |
| | : | |
| Counterclaim-Defendant | : | |
| | : | |
| and | : | |
| | : | |
| CRAIG KRUEGER, | : | |
| | : | |
| Third-Party Defendant. | : | |

Pending before the Court is Fancaster, Inc.'s ("Plaintiff") Motion to File a Supplemental Complaint under Rule 15(d) of the Federal Rules of Civil Procedure and for a related case management order. (Docket Entry No. 67). Specifically, Plaintiff seeks to allege new infringing activities against Comcast Corporation, Comcast Interactive Media, LLC and Comcast Cable Communications Management, LLC (collectively referred to as "Defendant"), add a prayer for

disgorgement of Defendant's profits, take limited discovery into the new alleged infringing activities and to serve any resulting expert reports. (Plaintiff's Memorandum of Law in Support of Its Motion For Leave To File A Supplemental Complaint and for a Related Case Management Order, Docket Entry No. 67, attachment 2 ("Pl.'s Br.") at p. 1). For the reasons set forth below, Plaintiff's Motion is GRANTED. The Court will convene a conference in order to set strict parameters on the scope and duration of the amended case management order.

## I.        PROCEDURAL BACKGROUND

Plaintiff filed its complaint in this trademark infringement action against Defendant on June 12, 2008. (Docket Entry No. 1,the "Complaint"). On June 27, 2008, Plaintiff filed an Amended Complaint prior to any responsive pleading. (Docket Entry No. 3, Plaintiff's Amended Complaint ("Amnd. Compl." ). On August 17, 2009, the Court entered a Second Amended Pretrial Scheduling Order, which closed fact discovery on October 16, 2009 and expert discovery on January 27, 2010. (Docket Entry No. 47). On December 17, 2009 the Court convened a telephonic conference and became apprised of a breakdown in Plaintiff's relationship with its then counsel, William Janklow. On December 28, 2009, Mr. Janklow filed a formal motion to withdraw, which the Court granted on February 8, 2010. (Docket Entry Nos. 52 and 58). On March 19, 2010, Plaintiff obtained the services of the law firm of Pashman Stein, P.C., three days before its deadline to obtain counsel. (Docket Entry No. 59). On May 12, 2010, Plaintiff's new counsel informed the Court of Defendant's new alleged infringing activity and its intention to supplement the Amended Complaint. On May 21, 2010, Plaintiff moved to supplement the Amended Complaint and for entry of a related case management order. (Docket Entry No. 67).

## II.     FACTUAL ALLEGATIONS

### A.     Plaintiff's FANCASTER® Mark and Services and Defendant's Alleged Infringement

Taking the allegations in the Amended Complaint as true, Plaintiff has provided its products and service under its trade name, Fancaster, Inc. and its service mark, FANCASTER. (Amnd. Compl. at ¶ 11). Defendant provides cable television, internet, and digital voice products and services throughout the country. (*Id.* at ¶ 14). In July 2006, Plaintiff launched the web site www.fancaster.com, which provides content related to "sports, sports fans, broadcasting" and other related information. (*Id.* ¶ 12). Plaintiff alleges that Defendant has been aware of Plaintiff's business and its intellectual property rights since as early as July 2006 when Plaintiff's President, Mr. Kreuger, discussed possible business relationships with Defendant. (*Id.* at ¶¶ 15, 16).

After business discussions between the parties ceased, Defendant registered the domain name www.fancast.com and filed a U.S. trademark application for FANCAST. (*Id.* at ¶ 19). In April 2007, Defendant announced plans to launch an internet service that would provide services under the FANCAST mark via the www.fancast.com website. (*Id.* at ¶ 20). On January 8, 2008, Defendant officially launched www.fancast.com, which provides users access to "select television programs, information regarding television programming, television program listings and review, celebrity news information, movie recommendations and ticket purchasing through the affiliated website www.fandango.com." (*Id.* at ¶¶ 21-22).

Counts I through IV of the Amended Complaint allege violations of the *Lanham Act*, 15 U.S.C. § 1051 *et seq.,* for trademark infringement, false designation of origin and unfair competition,

trade name infringement[1] and cybersquatting. (*Id.* at ¶¶ 34-44). Count V alleges a violation of N.J.S. 56:4-1 for willful, intentional and knowing misappropriation of trademark and tradename. (*Id.* at ¶¶ 45-47). Count VI is a common law claim for unfair competition and deceptive trade practices, while Count VII, also a claim under the common law, is for trade name infringement. (*Id.* at ¶¶ 48-51). Count VIII is a claim for unjust enrichment of Defendant at Plaintiff's expense. (*Id.* at ¶¶ 52-53). Finally, Count IX seeks Injunctive Relief due to the "irreparable injury to [Plaintiff]'s goodwill and reputation." (*Id.* at ¶¶ 54-55).

Plaintiff's prayer for relief requests: (1) a permanent injunction against Defendant's use of the "the designation FANCAST, and any other mark or name that is confusingly similar to Fancaster's FANCASTER® mark; " (2) the transfer of five specific domain names[2] and "any other domain names containing the designation FANCAST, or any other mark or name that is confusingly similar to Fancaster's FANCASTER®;"; (3) that Plaintiff recover damages it has sustained; (4) attorney fees and costs; and (5) "other relief as the court may deem just and proper." (*Id.* at ¶ 55(a)-(h)).

### B.  Plaintiff Seeks to Allege New Infringing Activities and Add a Prayer for Disgorgement of Defendant's Profits

Plaintiff's instant motion seeks to add Defendant's new infringing activities allegedly perpetrated after the close of discovery. Specifically, on December 15, 2009, Defendant re-named FANCAST to Fancast XFINITY TV, and also announced an increase in the amount of On Demand

---

[1] Counts I, II and III also allege that "Comcast's conduct has been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a)."

[2] Specifically, Plaintiff seeks the transfer of ownership of www.fancast.com, www.phancast.com, www.fancas.com, www.fancast.com, www.fancastic.com,

content that is available on the www.fancast.com website. (*see* Pl.'s Br. at 1-3). Plaintiff argues that Defendant's revenue is increased by Fancast XFINITY TV because it: (1) attracts new customers; (2) encourages existing customers to upgrade their cable TV subscriptions in order to view additional "premium" content "On Demand" at www.fancast.com.; (3) allows customers to purchase or rent movies; and (4) enables Defendant to charge advertisers for advertisements that viewers are required to watch prior to viewing "on-demand online" content. (*Id.* at 1-6). Plaintiff also claims that in February 2010, Defendant began to attach the "XFINITY" name to all of its services in television advertisements, print advertisements and radio spots.[3] (*Id.* at 6). In sum, Plaintiff argues that Defendant's transition from FANCAST to Fancast XFINITY TV, including the addition of new services, is a new infringement of its FANCASTER mark. Therefore, if Defendant subsequently transitions the name of its On Demand Online services from Fancast XFINITY TV to simply XFINITY TV, then consumers will believe that Plaintiff's FANCASTER mark no longer exists. (Docket Entry No. 82, Plaintiff's Reply in Support of Its Motion for Leave to File a Supplemental Complaint and for a Related Case Management Order ("Pl.'s Reply Br.") at 2). Furthermore, the instant motion also includes a request to supplement Plaintiff's prayer for relief by adding a prayer for disgorgement of Defendant's wrongful profits in accordance with 15 U.S.C. § 1117(a) or (b). (Pl.'s Br. at 11).

### III.   LEGAL STANDARD

Fed. R. Civ. P. 15(d) governs the filing of supplemental pleadings and permits "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after

---

[3] Plaintiff claims that websites operated by Defendant that contain the term "XFINITY" simply redirect On Demand Online users to the original www.fancast.com website. (Pl.'s Br. at 7).

the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) promotes "judicial economy, avoids multiplicity of litigation, and promotes 'as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed.'" *Hassoun v. Cimmino*, 126 F.Supp.2d 353, 360 (D.N.J. 2000) (quoting *Glenside West Corp. v. Exxon Co.*, U.S.A., 761 F.Supp. 1118, 1134 (D.N.J. 1991)). Motions to supplement pleadings, however, "are left to the sound discretion of the Court." *Glenside West Corp.*, 761 F.Supp. at 1133.

Although Fed. R. Civ. P. 15(d) does not include 15(a)'s explicit mandate that leave to supplement be "freely given," courts have construed Rule 15(d) to require such a liberal approach. *See Hassoun*, 126 F.Supp.2d at 360; *Tormasi v. Hayman,* 2010 WL 1878961 at *2 (D.N.J. May 10, 2010). Accordingly, "[l]eave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading." *Hassoun*, 126 F.Supp.2d at 360-61. Here, Defendant argues that the Court should deny the Motion to add (1) the new infringing activities and (2) a prayer for disgorgement of Defendant's profits. Each issue will be addressed in turn.

        **A.**      **Supplementing the Amended Complaint to Add New Infringing Activities**

Defendant argues that Plaintiff unduly delayed in seeking to supplement its Amended Complaint, and that Defendant will be unduly prejudiced if the Motion is granted. (Comcast's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a Supplemental Complaint and For a Related Case Management Order ("Def.'s Opp. Br.") at 16-20)[4]. First,

---

[4] The Court is in receipt of Defendant's letter dated October 20, 2010 and Plaintiff's letter dated October 21, 2010; these letters, although considered, do not change the Court's analysis of the instant motion.

Defendant argues that Plaintiff has unduly delayed in seeking to add new infringing activities because Fancast XFINITY TV is the same business model as its previous FANCAST On Demand Online business model. (Def.'s Opp. Br. at 16). Specifically, Defendant argues that Plaintiff knew of its plans to expand its services for its On Demand Online business model because of press releases and through documents produced in discovery. (*Id.*). Plaintiff contends that Defendant did not make the announcement to change FANCAST to Fancast XFINITY TV and the addition of new services until December 2009, around the time that Plaintiff did not have counsel. (Pl. Reply Br. at 4-5).

Delay alone does not justify denial of a motion to amend. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Rather, denial of a motion under Rule 15 is appropriate where delay becomes "undue" in that it places an unfair burden on the court. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984), *cert denied*, 469 U.S. 1122 (1985); *see also Frolow v. Wilson Sporting Goods, Co.*, Civ. Action No. 2009 WL 904049, at *6 (D.N.J. April 1, 2009). In determining undue delay, the Court is guided by the actions of the moving party, as well as its reasons for not moving sooner. *Lyon v. Goldstein*, Civil Action No. 04-3458, 2006 WL 2352595, at *4 (D.N.J. Aug. 15, 2006); *See Adams*, 739 F.2d at 869 (3d Cir. 1984).

The Court is not persuaded that Plaintiff unduly delayed in seeking to supplement the Amended Complaint. The Court finds that Plaintiff did not have notice of Fancast XFINITY TV until Defendant's press release dated December 15, 2009. Defendant's assertion that Plaintiff had notice of Defendant's intention to expand its On Demand Online services prior to December 15, 2009 is without merit[5] as the FANCAST name was not officially changed to Fancast XFINITY TV

---

[5] Defendant argues that Plaintiff had notice of Defendant's intention to increase its On Demand Online services because of press releases that date back as far back as February 20, 2009. (Declaration of Tal E. Dickstein in Support of Comcast's Opposition to Plaintiff's Motion

until December 15, 2009.  Moreover, Plaintiff was not represented by counsel from December 17, 2009 through March 19, 2010.  Because Plaintiff's new counsel moved to supplement within two months of appearing in this action, Plaintiff did not unduly delay in seeking to supplement its pleading.

Second, Defendant argues that adding new allegedly infringing activities is unduly prejudicial because the Court will have to re-open discovery and Defendant will have to contend with new issues in the case. (Def.'s Opp. Br. at 18-20).  Specifically, Defendant argues that Plaintiff's request for additional discovery will require Defendant to duplicate previous efforts, including a re-review of internal documents and the re-taking of depositions. (Def.'s Opp. Br. at 19-20).  In opposition, Plaintiff argues that the burden on Defendant is minimal because it only seeks discovery of facts which occurred after the close of fact discovery, and that supplementation serves judicial economy and the interests of justice.  (Pl.'s Reply Br. at 6-8.)

It is well settled in the Third Circuit that "prejudice to the non-moving party is the touchstone for denial of leave to amend."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) (citing *Cornell & Co. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.

---

for Leave to File a Supplemental Complaint and for a Related Case Management Order ("Dickstein Decl."), Exhs. 11-26).  The press releases, however, do not mention an intent to change FANCAST to Fancast XFINITY TV. (*Id*.).  The Court also considered whether Plaintiff had notice as of October 16, 2009, when plaintiff's former counsel deposed Ms. Spears, an executive of Defendant. (*See* Dickstein Decl., Exh. 4).  Although Ms. Spears testified that Defendant planned to increase its On Demand Online services on the FANCAST website, and that the purpose is to "provide value ad to the cable service," the Court also finds that the testimony does not place Plaintiff on notice of Defendant's intent to change FANCAST to Fancast XFINITY TV. (*Id.*; Deposition of Nancy Spears, October 16, 2009, 31:1 - 33:6).  Lastly, Defendant's production of internal documents about the FANCAST website and its On Demand Online component are similarly devoid of Defendant's intent to transition FANCAST to Fancast XFINITY TV. (*see* Dickstein Decl., Exhs. 5, 6, 7, 9 and 10).

1978). Undue prejudice occurs when the non-moving party is "unfairly disadvantaged or deprived the opportunity to present facts or evidence which it would have offered had the [moving party] been timely." *Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), *cert. den. sub nom. F.D. Rich Housing of the Virgin Islands, Inc., v. Gov't of the Virgin Islands,* 455 U.S. 1018, 1020 S.Ct. 1714 (1982); *see also Belekis v. Burberry, Ltd.*, 2001 WL 34047386, at *2 (D.N.J., Dec. 14, 2001). In deciding whether a proposed amendment unduly prejudices the non-moving party, courts in this circuit consider whether granting leave to amend would: (1) "require defendants to expend significant additional resources to conduct discovery and prepare for trial"; (2) "significantly delay resolution of the dispute"; or (3) "prevent another party from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also Formosa Plastics Corp., U.S.A. v. ACE American Ins. Co.*, 259 F.R.D. 95, 99 (D.N.J. Aug 14, 2009).

      The Court finds that Defendant will not suffer undue prejudice if Plaintiff's motion is granted. Defendant already possesses most documents relevant to its defense, and any additional discovery, including additional depositions, is unlikely to be onerous. The Court also finds that this action will not be significantly delayed because the Court can set appropriate limits on the duration and scope of additional discovery. Accordingly, the Court finds that Defendant is not unduly prejudiced if the Court grants the instant motion. Plaintiff's motion to supplement the Amended Complaint to add Defendant's new allegedly infringing activities is granted.

### B. Supplementing the Amended Complaint to Add a Prayer for Disgorgement of Defendant's Profits

Plaintiff seeks to supplement its Amended Complaint to add a prayer for disgorgement of Defendant's profits. Defendant argues that the Court should not allow Plaintiff to add a prayer for disgorgement of Defendant's profits because Plaintiff waived its statutory right of recovery. Defendant claims that on October 9, 2009, Plaintiff formally supplemented its response to Defendant's interrogatory request number 12, which sought information relating to the categories and calculations of Plaintiff's compensatory damages (the "October 9 Letter"). (Def.'s Opp. Br. at 9-10). Plaintiff asserts that there is a statutory distinction between Plaintiff's compensatory damages and disgorgement of Defendant's wrongful profits, and that the October 9 Letter only waived certain theories of compensatory damages, not disgorgement of profits. (Pl.'s Reply Br. at 9-12).

Pursuant to 15 U.S.C. § 1117(a), Plaintiff may recover "Defendant's profits, any damages sustained by Plaintiff, *and* the costs of the action" for any conduct which infringes on Plaintiff's trademark. (emphasis added). "Profits and damages are categorically distinct" since "disgorgement of profits focuses on the prevention of unjust enrichment and the deterrence of willful infringement," while "compensatory damages . . . redress an injury." *Castrol, Inc. v. Penzoil Quaker State Co.*, 169 F.Supp.2d 332, 344 (D.N.J. 2001).

Keeping in mind that compensatory damages and disgorgement of profits are categorically distinct, the Court finds that Plaintiff did not waive its statutory right to disgorgement of profits. At the deposition of Plaintiff's President, Mr. Kreuger, counsel for Defendant questioned Plaintiff on both compensatory damages and disgorgement of profits. (*See* Transcript of Deposition of Craig Krueger, dated September 15, 2009, ("Dep. of Kreuger")). Mr. Kreuger testified that Plaintiff would

seek corrective advertising damages for its inability to expand into new markets, lost goodwill and reputation, and lost time and focus on the business, but that he did not have enough information to quantify the amount. (Dep. of Kreuger, 341:2 - 354:11). Separate from the exchange regarding compensatory damages, Kreuger also testified that Defendant's profits are another category of damages Plaintiff would seek. (*see Id.* at 354:12 - 358:14).

After testimony about disgorgement of Defendant's profits, defense counsel asked Plaintiff to quantify the losses Plaintiff has sustained. (*Id.* at 358:15 - 369:23). Because Mr. Kreuger testified that he could not calculate such losses, all counsel agreed that Mr. Janklow would supplement its responses to the compensatory damages Plaintiff would seek.[6] The October 9 Letter, when read in conjunction with the deposition of Mr. Kreuger, reveals that Mr. Janklow was clarifying Plaintiff's theories of compensatory damages, which did not pertain to any claim for Defendant's profits. (Dickstein Decl., Exh. 30).

Additionally, the Court is not persuaded by Defendant's argument that the addition of a prayer for disgorgement of profits will inject a new issue into the case. Indeed, Defendant's interrogatories sought information on both Plaintiff's unjust enrichment claim and compensatory damages. (See Pl.'s Br., Exh. E, Interrogatory Nos. 10 and 12). Defendant's argument that adding a prayer for disgorgement of Defendant's profits will inject a "new" issue is therefore without merit. Furthermore, discovery into Defendant's profits is significantly limited in scope as Plaintiff only seeks profits information for activities that commenced after the close of fact discovery. The Court

---

[6] The Court finds that a fair reading of the entire transcript reveals that Plaintiff agreed to provide more information about the losses Plaintiff sustained to its reputation, goodwill, corporate and brand identity, lost ability to expand into new markets, lost time and focus on the business, emotional injury and pain and suffering. (Dep. of Kreuger, 370:15 - 372:22)

-11-

is also mindful of the fact that Plaintiff's request to add a prayer for disgorgement of profits is timely; Defendant's announcement on December 15, 2009 to increase its On Demand Online services under the Fancast XFINITY TV name and the February 2010 advertising campaign occurred after the close of fact discovery and while Plaintiff was unrepresented by counsel. Accordingly, adding a claim for disgorgement of Defendant's profits and the re-opening of discovery allows the parties to fully adjudicate the matter.

## V.   CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion to supplement its Amended Complaint. The Court will convene a telephonic conference for the purpose of setting an appropriate case management order.

                                          **s/ Esther Salas**
                                          **HONORABLE ESTHER SALAS,**
                                          **United States Magistrate Judge**